CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 14 2015

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CROSSROADS EQUITY PARTNERS, LLC, ET AL.,

Plaintiffs,

v.

DOGMATIC PRODUCTS, INC., ET AL.,

Defendants.

Civil Action No. 3:15CV00002

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Chief United States District Judge

Plaintiffs Crossroads Equity Partners, LLC ("CEP") and Charles Lunsford filed this declaratory judgment action pursuant to 28 U.S.C. § 2201 against defendants Dogmatic Products, Inc. ("DPI") and Reynolds E. Moulton, III. This case is presently before the court on defendants' motion to dismiss. For the reasons set forth below, the court will deny the motion.

**Background**

The following facts, taken from plaintiffs' complaint, are accepted as true for purposes of defendants' motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

CEP is the owner and holder of a promissory note made by DPI with a principal amount of $150,000.00. Moulton personally guaranteed both the payment of the note and the performance of DPI's obligations. Subsequently, DPI and Moulton defaulted on both the note and the guaranty. After the defaults, on October 11, 2011, CEP filed a complaint in this court against DPI for breach of the note and against Moulton for breach of the guaranty (the "Federal Action"). Moulton, proceeding pro se, filed four counterclaims against CEP in which he alleged, inter alia, that Lunsford breached certain duties to DPI and wrongfully used the note "as leverage to take the assets" of DPI. Compl. ¶ 18. Moulton later withdrew these counterclaims from the

Federal Action after he retained counsel to represent both him and DPI.

On May 8, 2012, CEP obtained a judgment against DPI and Moulton on the note and guaranty for the principal amount of $150,000.00, plus interest, late fees, and attorney's fees and costs. The total judgment exceeded $200,000.00. On May 8, 2013, DPI and Moulton filed a motion for relief from the court's judgment, arguing that their attorney failed to advise them of certain counterclaims to CPI's claims. In their motion, DPI and Moulton argued that their attorney convinced them not to file any counterclaims, and that advice materially prejudiced them. Moreover, on November 11, 2013, Moulton filed an affidavit in which he stated that counsel failed to advise him and DPI that certain counterclaims were compulsory, and thus deprived them of their right to assert these counterclaims. On February 24, 2014, the court denied the motion for relief from judgment. The final proceeding in the Federal Action occurred on July 22, 2014 when the court awarded attorney's fees and costs to CEP that it incurred in defending the motion.

On November 6, 2014, DPI and Moulton filed a complaint in the Circuit Court for the County of Albemarle (the "State Action"). In their complaint, DPI and Moulton asserted causes of action for conspiracy, tortuous interference, and breach of contract against both CEP and Lunsford. On January 15, 2015, CEP and Lunsford filed a complaint in this court seeking a declaratory judgment that Federal Rule of Civil Procedure 13(a)(1) bars DPI and Moulton from pursuing its causes of action in the State Action because they were compulsory counterclaims in the Federal Action. CEP and Lunsford allege that DPI and Moulton's causes of action are the same or substantially similar to the counterclaims that they previously filed and withdrew in the Federal Action, and also arise out of the same transaction or occurrence as the Federal Action. On March 26, 2015, DPI and Moulton filed a motion to dismiss the declaratory judgment action.

In their motion, DPI and Moulton argue that the complaint fails to state a proper claim for declaratory relief or, in the alternative, the court should decline to entertain the declaratory judgment action. The motion has been argued and fully briefed, and is now ripe for a decision.

**Standard of Review**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In ruling on a 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Id. at 244. Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

**Discussion**

**I. Subject Matter Jurisdiction Over the Declaratory Judgment Action**

As a preliminary matter, the court must first decide whether it can exercise subject matter jurisdiction over CEP and Lunsford's declaratory judgment action. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The United States Court of Appeals for the Fourth Circuit has interpreted the statute to require three elements: "(1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction);

and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004).

For purposes of the first subject matter jurisdiction prerequisite, there must be an actual controversy between the parties. "When determining whether an actual controversy exists in a declaratory judgment action, the [c]ourt must ask 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.'" Shore Bank v. Harvard, 934 F. Supp. 2d 827, 837 (E.D. Va. 2013) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)). Here, DPI and Moulton do not dispute that there is an actual controversy between the parties. To the extent that there is a dispute in regard to this element, the court finds that the pending State Action constitutes an actual controversy between the parties. See Volvo Const. Equip. N. Am., Inc., 386 F.3d at 593 (holding that the actual controversy prong was satisfied when the plaintiff received written and oral litigation threats from defendants and separate suits had been filed against it); see also Kettler Int'l, Inc. v. Starbucks Corp., 55 F. Supp. 3d 839, 847 (E.D. Va. 2014) (finding that an actual controversy existed and noting that several cases have found that litigation "threats are sufficient to create such a controversy"). Therefore, the court finds that this first element is met.

In considering the second jurisdictional requirement, the court must determine whether there is an independent basis for jurisdiction over the parties. Here, the court finds that it has diversity jurisdiction in this case. 28 U.S.C. § 1332. Specifically, complete diversity exists among the parties as both CEP and Lunsford are citizens of Virginia, DPI is a citizen of Massachusetts and New York, and Moulton is a citizen of New York. The amount in controversy requirement is also met because DPI and Moulton seek compensatory damages, statutory

damages, and punitive damages in an amount not less than $20,000,000.00. Accordingly, the court finds that the second prong of the declaratory judgment subject matter jurisdiction test is also met.

Finally, in terms of the third jurisdictional element, the court believes that it will not abuse its discretion by exercising jurisdiction over this declaratory judgment action. A district court does not abuse its discretion in exercising jurisdiction when it will "serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Volvo Const. Equip. N. Am., Inc., 386 F.3d at 394 (internal quotation marks omitted). A useful purpose will not be served when a declaratory judgment is "not necessary or proper at the time under all the circumstances." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937). As explained more thoroughly below, a declaratory judgment in this case would resolve the State Action between the parties, which has been stayed pending the proceedings in this court. It is therefore necessary and proper for the court to entertain this declaratory judgment action. Accordingly, the court finds that a declaratory judgment will serve a useful purpose in clarifying the legal relations and afford relief to the parties, and, thus, that the last prerequisite for subject matter jurisdiction over this action is satisfied.

## II. Discretion to Entertain an Action Under the Declaratory Judgment Act

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)). This discretion stems from the Declaratory Judgment Act itself, which expressly states that district courts "may declare the

rights and other legal relations of any interested party seeking a declaration." 28 U.S.C. § 2201(a) (emphasis added). In light of this nonobligatory language, the United States Supreme Court has explained that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288.

In the Fourth Circuit, the district court's discretion is "especially crucial when, as here, a parallel or related proceeding is pending in state court." New Wellington Fin. Corp. v. Flagship Resort Develop. Corp., 416 F.3d 290, 297 (4th Cir. 2005). When there is a pending state court action, district courts possess a "wide discretion" when deciding whether to accept jurisdiction over a declaratory judgment action. Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996). Specifically, the district court should determine whether the controversy "can better be settled in the proceeding pending in the state court." Wilton, 515 U.S. at 282. Moreover, the district court must take into account "considerations of federalism, efficiency, and comity." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994). The Fourth Circuit has articulated four factors that district courts should consider when balancing state and federal interests:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998) (citing Nautilus, 15 F.3d at 377). For the following reasons, the court concludes that the Nautilus factors are either neutral or weigh in favor of this court retaining jurisdiction over the declaratory judgment action.

### *a. State Interest*

The first factor the district court should consider is whether the state has a strong interest in having the issues raised in the declaratory judgment action decided in its courts. "There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." Mitcheson v. Harris, 955 F.2d 235, 237 (4th Cir. 1992). If the questions of state law are "difficult, complex, or unsettled," abstention is appropriate. Nautilus, 15 F.3d at 378. However, if the federal action involves the "routine application of settled principles of law to particular disputed facts," then the state's interest is "no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of decision." Id.

Here, the issue raised in the declaratory judgment action is whether DPI and Moulton's complaint in the State Action is barred because of the federal compulsory counterclaim rule. Not only is there is no difficult, complex, or unsettled question of state law in the present declaratory judgment action, there is no question of state law at all. As such, the most authoritative voice to speak on the meaning of the applicable law in this case would be the federal court. The court recognizes, however, that Virginia state courts may decide the issue of whether the federal compulsory counterclaim rule bars a litigant from pursuing a claim in state court. See, e.g., Balbir Brar Assocs., Inc. v. Consolidated Trading & Servs. Corp., 252 Va. 341, 342 (1996) (looking at federal law to determine whether a litigant is barred under Federal Rule of Civil Procedure 13 from bringing its action in state court). Accordingly, the court finds that Virginia does not have a strong interest in resolving this issue of federal law in its courts, and this factor weighs in favor of the court retaining jurisdiction.

*b.* ***Efficiency***

The second factor the court must address is whether the state court could resolve the issues more efficiently than the federal court. "As a general rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" Riley v. Dozier Internet Law, PC, 371 F. App'x 399, 403 (4th Cir. 2010) (quoting Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974)). Efficiency is not always "synonymous with speed," but more about the "efficient use of all court resources." Nat. Fire Ins. Co. v. Robertson, No. 1:08CV516, 2009 WL 961466, at *6 (W.D.N.C. Apr. 7, 2009). In evaluating efficiency, the court should focus primarily on "whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceedings that are already pending in the state court." Nautilus, 15 F.3d at 378.

In the instant case, although the State Action was filed before the declaratory judgment action, the first suit was in fact the Federal Action, considering the similarities between the pleadings in that case and those in the State Action. Moreover, Circuit Court Judge Cheryl V. Higgins found, during a hearing in the State Action, that this court was the court of first jurisdiction. See Docket No. 20-1 at 35 ("I view the federal court as being the court of first jurisdiction considering how similarly worded the pleadings are."). This court presided over the Federal Action for three years and the parties had engaged in discovery prior to the court's decision to grant summary judgment in favor of CEP. See NGM Ins. Co. v. Evans, 642 F. Supp. 2d 511, 517 (W.D.N.C. 2009) (retaining jurisdiction over a declaratory judgment action when all defendants had answered or been held in default, the court had entered a discovery plan, and the parties were in the midst of discovery). Overall, this court is more familiar with the issues underlying the Federal Action, which must be considered when determining whether the

compulsory counterclaim rule is implicated. If this court were to decline to exercise jurisdiction, then there would certainly be "inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources." Riley, 371 F. App'x at 403. In fact, Judge Higgins found that it would promote judicial economy for this court to retain jurisdiction over the declaratory judgment action. See Docket No. 20-1 at 35 (finding judicial economy "where the federal court has had this particular case for three years" and Judge Conrad is "familiar with the procedural history"). Accordingly, the court concludes that retaining jurisdiction over this action would efficiently resolve the parties' arguments, and this factor weighs in favor of the court exercising jurisdiction over the declaratory judgment action.

***c. Unnecessary Entanglement***

The third factor the court should consider is whether the presence of overlapping issues of fact and law would cause unnecessary entanglement between the state and federal courts. The risk of unnecessary entanglement is more distinct when common issues are "already being litigated by the same parties in related state court actions." Nautilus, 15 F.3d at 379. This overlap creates a "real risk that the state court's prior resolution of overlapping issues would entitle those issues to preclusive effect." Riley, 371 F. App'x at 403.

Here, the issues to be decided by the state court and the federal court are the same. In the State Action, CEP and Lunsford filed a plea in bar, arguing DPI and Moulton are barred from bringing the action because of the federal compulsory counterclaim rule. However, this overlap is of minor concern as the state court has already decided to stay its case pending the resolution of this declaratory judgment action. See Nationwide Mut. Ins. Co. v. 1400 Hampton Blvd., LLC, Nos. 2:10cv310, 2:10cv343, 2010 WL 5525078, at *4 (E.D. Va. 2010) (finding no unnecessary entanglement when the state court stayed its case until the declaratory judgment matter was

resolved). Since there is no possibility of the state court's decision having preclusive effect on this court, there is no risk of unnecessary entanglement between the state court and this court. Accordingly, the court finds that this factor weighs in favor of the court retaining jurisdiction over the declaratory judgment action.

***d. Procedural Fencing***

Lastly, the court must consider whether the declaratory judgment action is mere procedural fencing and a product of forum-shopping. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (4th Cir. 2006). A declaratory judgment action may not be used "to achiev[e] a federal hearing in a case otherwise not removable." Nautilus, 15 F.3d at 377 (citation and internal quotation marks omitted). However, even when the parallel state action is filed before the declaratory judgment action, courts will not generally find procedural fencing without some further evidence of forum shopping. Allstate Property and Cas. Ins. Co. v. Cogar, 945 F. Supp. 2d 681, 692 (N.D. W. Va. 2013).

In the instant case, CEP and Lunsford are not able to remove the State Action to federal court because they are Virginia citizens. See 28 U.S.C. § 1441(b)(2). Even though the case is not removable, DPI and Moulton have not provided further evidence that CEP and Lunsford were trying to "bypass the removal mechanism and instead use the Declaratory Judgment Act as a ticket into federal court." Riley, 371 F. App'x at 405. Moreover, Judge Higgins found that staying the State Action pending the declaratory judgment ruling would not be opening the door to forum shopping. Docket No. 20-1 at 35-36. However, given the fact that CEP and Lunsford filed their declaratory judgment action before Judge Higgins decided to stay the State Action,

there appears to be some indication that CEP and Lunsford were seeking to have the compulsory counterclaim issue decided first in a more favorable forum. Even if this fact is sufficient evidence to show that CEP and Lunsford engaged in forum shopping, the court finds that this information does not change its analysis. CEP and Lunsford argue that DPI and Moulton also engaged in forum shopping by filing their claims in state court rather than bringing them as compulsory counterclaims in the Federal Action. Where there is evidence that both parties have engaged in procedural fencing, this factor does not weigh in favor of either party. Cogar, 945 F. Supp. 2d at 692. Therefore, the court finds that this factor weighs neither for nor against abstention in this case.

In sum, the court concludes that the Nautilus factors are either neutral or weigh in favor of this court retaining jurisdiction over the declaratory judgment action.

**Conclusion**

For the foregoing reasons, the court will deny DPI and Moulton's motion to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 14th day of October, 2015.

[signature]

Chief United States District Judge