CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 20 2016
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CROSSROADS EQUITY PARTNERS, LLC, ET AL., | ) ) ) |
| Plaintiffs, | ) Civil Action No. 3:15CV00002 ) ) |
| v. | ) **MEMORANDUM OPINION** ) ) By: Hon. Glen E. Conrad |
| DOGMATIC PRODUCTS, INC., ET AL., | ) Chief United States District Judge ) |
| Defendants. | ) ) |

Plaintiffs Crossroads Equity Partners, LLC ("CEP") and Charles Lunsford filed this declaratory judgment action against defendants Dogmatic Products, Inc. ("DPI") and Reynolds E. Moulton, III. This case is presently before the court on plaintiffs' motion for judgment on the pleadings. For the reasons set forth below, the court will deny the motion.

## Background

CEP was the holder of a promissory note made by DPI in the amount of $150,000.00 (the "Note"). Moulton personally guaranteed both DPI's payment of the Note and the performance of its obligations under the Note. DPI and Moulton subsequently defaulted on both the Note and the guaranty. After the defaults, CEP filed a two-count complaint in this court against DPI and Moulton for breach of contract. See Crossroads Equity Partners, LLC v. Dogmatic Products, Inc., No. 3:11-CV-00069 (W.D. Va.). In this prior federal action, Moulton, proceeding pro se, filed four counterclaims against CEP in which he alleged, inter alia, that Lunsford breached certain duties to DPI and wrongfully used the Note "as leverage to take the assets" of DPI. Compl. ¶ 18. Moulton later withdrew these counterclaims after he retained counsel to represent both him and DPI.

After DPI and Moulton failed to oppose CEP's motion for summary judgment, the court entered judgment against them on May 8, 2012 for the principal amount of $150,000.00, plus interest, late fees, and attorney's fees and costs; the total judgment exceeded $200,000.00. On May 8, 2013, DPI and Moulton filed a motion for relief from the court's judgment, arguing that they received ineffective assistance of counsel as to the motion for summary judgment. Specifically, DPI and Moulton argued that their attorney convinced them not to oppose the motion or file any counterclaims. They alleged that this advice severely prejudiced and penalized them. On November 11, 2013, Moulton filed an affidavit in which he represented that counsel failed to advise him and DPI that certain counterclaims were compulsory and, thus, deprived them of their right to assert these counterclaims. On February 24, 2014, the court denied the motion for relief from judgment. The final proceeding in the prior federal action occurred on July 22, 2014 when the court awarded CEP its attorney's fees and costs.

On November 6, 2014, DPI and Moulton filed a complaint in the Circuit Court for the County of Albemarle, asserting claims of conspiracy, tortious interference, and breach of contract against CEP and Lunsford. On January 15, 2015, CEP and Lunsford filed the instant action, seeking a declaration that Rule 13 of the Federal Rules of Civil Procedure bars DPI and Moulton from pursuing the claims in the state action because those claims were compulsory counterclaims in the prior federal action. Specifically, CEP and Lunsford allege that the state action claims arose out of the same transaction or occurrence that was the basis of the claims in the prior federal action and, thus, are barred by the federal compulsory counterclaim rule. On March 26, 2015, DPI and Moulton filed a motion to dismiss the instant action. In that motion, they argued that the complaint failed to state a proper claim for declaratory relief, or, in the alternative, that the court should decline to entertain the declaratory judgment action. On October

2

14, 2015, the court denied the motion to dismiss and held that it would exercise its discretion to entertain the action. Thereafter, DPI and Moulton filed an answer in the instant action in which they denied the allegations in the complaint and raised various affirmative defenses, including that the state action claims were not compulsory counterclaims. On November 20, 2015, plaintiffs filed a motion for judgment on the pleadings. The court held a hearing on the motion on March 3, 2016. The motion has been fully briefed and is now ripe for disposition.

## Standard of Review

Rule 12 of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is appropriate when there are no genuine issues of material fact and "only questions of law remain." Va. Imports v. Kirin Brewery of Am., 296 F. Supp. 2d 691, 695 (E.D. Va. 2003); see also O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000) ("Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law."). Such motions are "designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings." Preston v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). However, the court should not grant a Rule 12(c) motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC, No. 3:11-CV-00053, 2012 WL 3542527, at *2 (W.D. Va. Aug. 16, 2012). The court must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. Edwards v. City of Goldsboro, 178 F.3d 231, 248 (4th Cir.

3

1999). Thus, in reviewing a Rule 12(c) motion, district courts apply the same standard that would apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim, Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009), and may consider exhibits attached to the pleadings, Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014).

## Discussion

CEP and Lunsford believe that they are entitled to judgment as a matter of law that the claims in the state action were compulsory counterclaims in the prior federal action. DPI and Moulton oppose the motion and ask that the court find that their state action claims are not barred by the compulsory counterclaim rule.

Reviewing the pleadings in the instant action, the court concludes that CEP and Lunsford have failed to demonstrate that they are entitled to judgment on the pleadings. As an initial matter, the court believes that there is no material issue of fact that remains to be resolved as to the limited question before this court. Although there are certainly factual disputes as to the merits of the state action claims, this court is not tasked with deciding the merits of those allegations. Moreover, the court also believes that CEP and Lunsford have not clearly established the merits of their legal arguments in order for them to be entitled to judgment as a matter of law. See JP Morgan Chase Bank, N.A. v. Sampson, No. 1:10-cv-1666, 2012 WL 949698, at *7 (N.D. Ga. Mar. 20, 2012) ("[P]laintiff has failed to demonstrate its entitlement to judgment on the pleadings, not because of a disputed issue of fact, but because its claims fail as a matter of law."). Although DPI and Moulton have not filed a cross-motion for judgment on the pleadings in their favor, they dispute whether CEP and Lunsford are entitled to judgment as a matter of law and, instead, argue that they are entitled to judgment as a matter of law.

4

In the instant action, CEP and Lunsford contend that the claims in the state action arose out of the same transaction or occurrence as the claims in the prior federal action and, therefore, were compulsory counterclaims. Rule 13 of the Federal Rules of Civil Procedure provides that "[a] pleading must state as a counterclaim any claim that ... the pleader has against an opposing party if the claim ... arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" Fed. R. Civ. P. 13(a)(1). "Although the rule does not explicitly so state, the effect of a defendant's failure to assert a counterclaim made compulsory by [Rule 13(a)] is to preclude its assertion in a later action against the former plaintiff." Mesker Bros. Iron Co. v. Donata Corp., 401 F.2d 275, 279 (4th Cir. 1968).

In the Fourth Circuit, there are four inquiries that district courts consider in determining whether a counterclaim is compulsory: "(1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?" Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988). A court need not answer every question in the affirmative for a counterclaim to be compulsory. Id. The "underlying thread" to each inquiry is "evidentiary similarity." Id. at 332. If "the same evidence will support or refute the claim and counterclaim, the counterclaim will almost always be compulsory." Id. However, the "same evidence test" is not the "exclusive determinant of compulsoriness ... because it is too narrow a definition of a single transaction or occurrence." Id. As such, a counterclaim may be compulsory as a "logically related claim even though the evidence needed to prove the opposing claims may be quite different." Id.; see also 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1410 (3d. ed. 2010) ("[L]ogical

5

relationship ... is the preferred approach for determining what claims arise out of the same transaction or occurrence.").

Applying these principles, the court concludes that CEP and Lunsford are not entitled to judgment as a matter of law as DPI and Moulton's claims in the state action were not compulsory counterclaims in the prior federal action under either the "same evidence" or the "logical relationship" tests.[1] In the prior federal action, CEP asserted claims for breach of contract against DPI and Moulton. Under Count I, CEP claimed that DPI failed to make quarterly payments on the Note and failed to pay the accelerated sum once CEP demanded repayment, thereby breaching the terms of the Note. Under Count II, CEP alleged that Moulton personally guaranteed the Note and failed to pay the accelerated sum upon DPI's default, thereby breaching the terms of the guaranty. In the state action, filed by DPI and Moulton, the complaint includes claims of conspiracy, tortious interference, and breach of contract against both CEP and Lunsford under the premise that they took certain actions in order to interfere with DPI's business.

Under DPI and Moulton's theory in the state action, the negotiation of the Note and the filing of the prior federal action were merely components of the conspiracy and tortious interference. They assert that the negotiation and enforcement of the Note were part of a larger, independently actionable scheme by CEP and Lunsford to seize control of DPI. Specifically, the state action complaint details how CEP and Lunsford became involved with DPI, namely how Lunsford became a member of DPI's advisory board and gained knowledge of DPI's business and finances through this position. In addition, Lunsford was involved in the manufacturing and

---

[1] The court also finds that the first and second inquiries are not met for the same reasons outlined in the following paragraphs. Specifically, the court believes that the claims in the prior federal action and the state action raise different factual and legal issues. In addition, res judicata would not apply as the court believes that claims do not arise out of the same transaction or occurrence. Blick v. Long Beach Mortgage Loan Trust 2005-WL3, No. 3:13-CV-00002, 2013 WL 1319369, at *2 (W.D. Va. Mar. 29, 2013), aff'd, 539 F. App'x 126 (4th Cir. 2013)

6

sales of DPI's revolutionary new pet food product, known as "Munchers," which was expected to have long-term value for DPI. Compl. Ex. F ¶ 17, Docket No. 1-6. The state action complaint claims that Lunsford, who was the chairman of DPI's board at the time and understood DPI's precarious financial condition prior to the launch of the product, began a "hostile and illegal takeover of DPI" from Moulton. Id. ¶ 58. Defendants allege that part of this takeover involved threats to "call" the Note. Id. ¶ 59. Overall, DPI and Moulton assert that:

> Although DPI had lost the Munchers' purchase orders because of Lunsford's conspiracy, tortious interference, and breach of [] promise to fund production, Lunsford's defamatory statements injured DPI's reputation in the industry and eliminated any ability to attract new capital or to liquidate DPI's remaining intellectual property, good will and other assets.

Id. ¶ 77. As such, DPI and Moulton seek compensatory damages from CEP and Lunsford, jointly and severally, in the amount of $20,000,000.00—the amount that DPI allegedly would have been worth if Lunsford had not interfered in its business—and punitive damages in the amount of $350,000.00.

Under the "same evidence" test, the court concludes that the claims in the prior federal action and the claims in the state action did not arise out of the same transaction or occurrence. The evidence in the prior federal action focused solely on whether DPI breached the Note and whether Moulton breached his guaranty. The court was merely required to consider whether the parties entered into valid contracts, as the existence of a "legally enforceable obligation" is the first element of a breach of contract claim in Virginia. Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009). As such, if DPI and Moulton had sought to attack the validity of the Note and guaranty through the state action, such claims would have undoubtedly been compulsory counterclaims in the prior federal action, as they would involve the same evidence. However, none of the claims in the state action concern the validity of the Note. Instead, the

7

claims mainly involve CEP and Lunsford's alleged conspiracy to deprive Moulton of his position at DPI and Lunsford's interference with DPI's business endeavors. Although CEP and Lunsford repeatedly argue that the claims in the state action stem from the negotiation, formation, and enforcement of the Note, the court is constrained to disagree. In contrast, the court notes that DPI and Moulton believe that the Note was merely used as a tool in CEP and Lunsford's conspiracy to gain control over DPI, but they do not seek to undermine the enforceability of the Note through the state action. Presumably, the Note would not have been an effective tool for Lunsford to exert control over DPI and Moulton if they believed that it was unenforceable.

Furthermore, to the extent that CEP and Lunsford rely on Pumpelly v. Cook to support their position, the court finds such authority to be unpersuasive. In Pumpelly, the defendant filed a federal action against the plaintiff for breach of various agreements governing the plaintiff's shares in a tire company. 106 F.R.D. 238, 239 (D.D.C. 1985). The plaintiff then filed a separate action in another federal district court to have the agreements declared void. Id. In deciding that the plaintiff's claims were compulsory counterclaims in the defendant's action, the district court found that "[t]he question of whether these agreements are valid or not will thus involve the same evidence that would be considered by this Court if plaintiff's claims were litigated here." Id. In the instant action, as DPI and Moulton do not attack the validity of the Note and guaranty in the state action, the court concludes that the claims in the state action and the prior federal action do not involve the same evidence. Accordingly, the court finds that DPI and Moulton's claims in the state action did not arise out of the same transaction or occurrence as the claims in the prior federal action under the "same evidence" test.

Under the "logical relationship" test, the court also finds that the claims in the state action and the prior federal action did not arise out of the same transaction or occurrence. Although this

8

test is a "flexible inquiry[,]" the court cannot find that the two actions concern the same factual dispute even under this more lenient standard. Banner Indus. of New York, Inc. v. Sansom, 830 F. Supp. 325, 328 (S.D.W. Va. 1993). Again, the prior federal action simply involved claims that defendants' breached the Note and guaranty. Notably, Lunsford was not a party in that action. On the other hand, the complaint in the state action alleges that Lunsford and others engaged in a scheme to take over DPI's business through several tactics, including threats that CEP would demand immediate payment on the Note. The state action claims, however, do not involve allegations that the Note was procured as part of the conspiracy. Instead, DPI and Moulton's theory is that Lunsford used the Note in order to acquire control of cash-strapped DPI. Moreover, the alleged goal of the conspiracy was to take over DPI's business, not to procure the Note. In fact, the complaint in the state action involves several other allegations that Lunsford used his position in DPI—independent of the Note—to exert influence over it and Moulton in furtherance of the conspiracy. These factual allegations are distinguishable from those found in Lesnik v. Public Industrials Corporation, a case cited by CEP and Lunsford, in which proof of a conspiracy claim involved allegations that a conspirator "took title of the note only as a step and a part in execution of the alleged conspiracy." 144 F.2d 968, 975 (2d Cir. 1944). In Lesnik, the Court found that "proof of the conspiracy [bore] directly upon [the plaintiff's] allegation of due and proper assignment of the note to him[,]" and, therefore, the claims and counterclaims should be tried together. Id. For purposes of the instant action, the court believes that proof of the conspiracy (Count I), tortious interference (Count II), and breach of contract (Count IV) claims in the state action will not involve the circumstances surrounding the negotiation and procurement of the Note or the subsequent breach of the Note and guaranty. See Sue & Sam Mfg. Co. v. B-L-S Const. Co., 538 F.2d 1048, 1053 (4th Cir. 1976) (finding that "[d]ifferences in

9

time, the causes of action, the cause of the damage, the proof of facts, and the issues would rule out a logical relation" between a claim and counterclaim); see also In re Penn Cent. Transp. Co., 419 F. Supp. 1376, 1383 (E.D. Pa. 1976) ("[T]he allegation that the conduct has its genesis in a conspiracy does not automatically lead to the conclusion that there is a logical relationship.").

Although the breach of contract claim under Count III of the state action complaint does indirectly involve the negotiation and procurement of the Note, the court concludes that that claim does not have a logical relationship to the breach of contract claims in the prior federal action. The allegation in Count III is that DPI and Moulton entered into a separate agreement with Lunsford, which Lunsford subsequently breached by not replacing the Note with another document. None of the essential facts alleged by CEP in support of its breach of contract claims in the prior federal action would go towards resolving the claims in the state action that Lunsford breached an enforceable, separate contract with DPI and Moulton. See Sue & Sam Mfg. Co., 538 F.2d at 1053 (finding that a logical relationship between a claim and counterclaim, in which the "proof of the claim ... and especially its defense required proof of many of the same facts as were necessary to the proof of the counterclaim"); see also Hosp. Bldg. Co. v. Trustees of Rex Hosp., 86 F.R.D. 694, 696 (E.D.N.C. 1980) (finding that, "if essential facts alleged by one party enter into and constitute a part of the cause of action set forth in the opposing party's counterclaim, that counterclaim is compulsory even though it may not be precisely identical to the [] cause of action and even though the counterclaim embraces additional allegations"). Again, Count III does not seek to undermine the enforceability of the Note or the guaranty. Moreover, the basis of Count III is not that Lunsford made allegedly fraudulent representations during the negotiations of the Note, but that those representations ultimately resulted in another agreement between him, DPI, and Moulton.

10

Finally, DPI and Moulton do not contend in the state action that they breached the Note based on Lunsford's promise to replace it with a new note. Simply put, Count III in the state action complaint alleges that Lunsford breached a separate agreement with DPI and Moulton that was made at the same time the parties entered into the Note. The court believes that this cause of action has no logical relationship to the enforceability of the Note, which was the basis of the prior federal action. As such, "[a]ny relationship between the parties' claims is not sufficient to make the counterclaims compulsory." Va. Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc., 813 F. Supp. 2d 745, 754 (W.D. Va. 2011). Accordingly, the court finds that the claims in the state action did not arise out of the same transaction or occurrence as the claims in the prior federal action under the "logical relationship" test.

In sum, the court finds as a matter of law that the claims in the state action were not compulsory counterclaims in the prior federal action under the four Painter inquiries. Therefore, the court will deny CEP and Lunsford's motion for judgment on the pleadings, as they have failed to show that they are entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, the court will deny CEP and Lunsford's motion for judgment on the pleadings. In denying the motion, the court finds as a matter of law that the state action claims were not compulsory counterclaims in the prior federal action. As this decision disposes of all issues pending before this court, the case will be stricken from the active docket. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 20th day of April, 2016.

/s/ Glen Conrad
Chief United States District Judge